UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JUSTINA LYNN WRIGHT,

Plaintiff,

v. Case No. 3:23-cv-1108-MMH-SJH

MATTHEW JONES,

Defendant.

---

# **ORDER**

## I. Status

Plaintiff Justina Lynn Wright, an inmate of the Florida Women's Reception Center, is proceeding pro se and in forma pauperis on an Amended Complaint for Violation of Civil Rights (Amended Complaint; Doc. 7). Wright alleges Defendant Jones, an officer with the Jacksonville Sheriff's Office (JSO), sexually assaulted her after pulling her over. See Amended Complaint at 7, 9. Although Wright's allegations are vague, the Court denied Defendant Jones's Motion to Dismiss on qualified immunity grounds, explaining that it had to accept as true that Wright was sexually assaulted. See Order (Doc. 21 at 14–15).

Before the Court is Defendant Jones's Motion for Summary Judgment in which he renews his argument that he is entitled to qualified immunity

(Motion; Doc. 29). After the Court issued an Order to Show Cause for Wright's failure to timely respond to Defendant's Motion, Wright filed a response in opposition (Response; Doc. 36). As such, the Motion is ripe for this Court's review.

## II. Summary Judgment Standard

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[1] An issue is genuine when the evidence is such that a reasonable

[1] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

jury could return a verdict in favor of the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that

---

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable.

In citing to Campbell, the Court notes that it does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)). "Summary judgment is improper, however, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Guevara v. NCL (Bahamas) Ltd., 920 F.3d 710, 720 (11th Cir. 2019) (quotation marks and citation omitted).

## III. Analysis & Conclusions

In support of his argument that he is entitled to qualified immunity, Defendant Jones offers the following exhibits: the transcript of Plaintiff's deposition; declarations by himself, another arresting officer, and JSO's Central Records Senior Manager; medical records; and video footage

(Exhibit(s) A to I; Docs. 29-2 to 29-10).[2] Defendant Jones argues he is entitled to qualified immunity because the evidence demonstrates he did not violate Wright's Fourth Amendment rights during the arrest. See Motion at 10.[3]

At her deposition, Wright clarified that her claim of sexual assault is based on two alleged interactions: one at the scene, when she first stepped out of her car, and one after she was transported to the "investigation office." See Exhibit A at 19, 21. As to the incident at the scene, Wright testified that Defendant Jones pulled her from her car, lifted her shirt up, groped her chest, and "nut check[ed]" her by placing his hand between her legs. Id. 17–18, 22.[4] She said the "nut check" was so forceful that it tore the skin on her genitalia, for which she sought treatment at the emergency room the next day. Id. at 23. As to the second alleged incident, Wright testified that Defendant Jones "lift[ed] her shirt up again, put his hand around [her] belt, and pat searched [her] again." Id. at 19–20. She also claims he "put his thumb in [her] waistband" and lifted her shirt up such that her belly was exposed. Id. at 20.

---

[2] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[3] The Court analyzes whether Defendant Jones is entitled to qualified immunity in accordance with the burden-shifting framework set forth in its Order on Defendant Jones's Motion to Dismiss. See Order (Doc. 21 at 8–12).

[4] Wright testified that she was born with both male and female sex organs, and her mother chose to raise her as a female. See Exhibit A at 18.

In his own declaration, Defendant Jones explains the basis for the traffic stop ("illegal window tint"); the reason he handcuffed and arrested Wright (failure to comply with lawful orders and marijuana use); and the scope of the search of Wright's vehicle incident to arrest ("strictly limited to checking for concealed weapons or contraband," during which officers uncovered marijuana and a firearm).[5] See generally Exhibit B. Defendant Jones does not address the search of Wright at the scene of the arrest, but he denies having searched her after transporting her to the Crime Gun Intelligence Center (CGIC)—what Wright calls the "investigation office." Id. ¶ 10.[6] The other officer who was present at the time and assisted with the vehicle search, C.D. Drabek, avers that he observed Defendant Jones search Wright at the scene and "did not witness any inappropriate behavior." See Exhibit C ¶ 6.

First, to the extent Wright suggests Defendant Jones intentionally touched her genitalia and breasts at the scene of the arrest, the best evidence of what occurred during Wright's arrest comes from the officers' body-worn camera footage. See generally Exhibits E, F. That footage indisputably refutes Wright's assertion that Defendant Jones lifted her shirt or groped her chest.

---

[5] Wright was a convicted felon at the time. See Exhibit A ¶ 9.

[6] Defendant Jones explains in his Motion that the body-worn camera footage captured only what occurred during the traffic stop and not what occurred at the CGIC because of the presence of an undercover officer. See Motion at 13 n.7.

Indeed, it shows that Defendant Jones remained professional in his interactions with Wright and did not touch her inappropriately when he pulled her from the car or when he searched her. See Exhibit E (time stamp 23:54:28–23:57:08); Exhibit F (time stamp 23:54:50–23:55:00, 23:55:33–23:56:45). Defendant Jones did grab Wright's wrist to usher her out her car after she refused to comply with his fifth command to step out, but he did not do so aggressively or forcefully. See Exhibit F (time stamp 23:54:50–23:54:57). Given this part of Wright's claim is blatantly contradicted by the clear, reliable video evidence, her allegations are not to be credited on summary judgment. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

With respect to the other alleged inappropriate contact that occurred at the scene—the "nut check"—the video footage does not show anything below the waist. See Exhibit E (time stamp 23:54:28–23:57:08); Exhibit F (time stamp 23:54:50–23:55:00, 23:55:33–23:56:45). However, what can be seen and heard undermines Wright's assertions. If, as Wright claims, Defendant Jones hit her so hard in the groin that it tore her skin, she likely would have had a physical and vocal reaction. She had no physical or verbal reaction to the

manner in which Defendant Jones touched her. See Exhibit E (time stamp 23:54:28–23:57:08). Indeed, Wright did not complain to Defendant Jones about any allegedly inappropriate contact but rather argued with him about how many times he asked her to step out of her car, and she repeatedly told him that her backseat passenger was handicapped. Id.

Moreover, the medical records Defendant Jones provides further undermine Wright's allegation that she was hit in the groin area so hard that it caused an injury. Two days after her arrest, on October 2, 2020, Wright went to the Orange Park Medical Center complaining about left shoulder pain, which she attributed to being "man handled by the police." See Exhibit G at 127. She expressly denied having sustained any "abrasion [or] laceration." Id. An x-ray of her shoulder was normal. Id. at 138.

Even though the video footage does not show any movements that may have occurred below the waistline, if this case were to proceed to trial, Wright would have only her own testimony that Defendant Jones "nut checked" her solely to inflict pain or for his own sexual gratification. Her unsubstantiated, after-the-fact assertion constitutes no more than a "mere scintilla of evidence" upon which no reasonable jury could find in her favor. See Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) ("A mere 'scintilla' of evidence supporting

the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.").

Second, as to the alleged incident at the CGIC, Defendant Jones denies having searched Wright at that location. See Exhibit B ¶ 10. However, even if Defendant Jones had lifted Wright's shirt or ran his thumb around her waistband, such contact during a pat-down search of an arrestee is not a constitutional violation. See Brown v. Bellinger, 843 Fed. App'x. 183, 187 (11th Cir. 2021) (holding it was not "per se unreasonable for [the officer] to search [the arrestee's] penis-and-testicles area" for up to two minutes). Indeed, a typical pat-down search can be intrusive: "A thorough search must be made of the prisoner's arms and armpits, waistline and back, the groin and area about the testicles, and entire surface of the legs down to the feet." Terry v. Ohio, 392 U.S. 1, 17 n.13 (1968).

In her Response, Wright offers no evidence contradicting Defendant Jones's evidence or arguments. See generally Response. In fact, Wright does not address the alleged sexual assault at all. Instead, she argues that Defendant Jones lacked probable cause to pull her over and arrest her, violated state constitutional or statutory provisions in connection with the traffic stop, and gave contradictory statements about whether she presented him with a medical marijuana card. See generally id. These arguments are immaterial to

the narrow issue before the Court: whether Defendant Jones sexually assaulted her. As the Court previously emphasized, Wright's sole claim against Defendant Jones is for sexual assault. See Order (Doc. 21 at 5 n.6). She does not assert an independent claim for false arrest or detention, nor do violations of state law give rise to a claim under § 1983. Id.

Wright also seemingly argues that the lack of video footage from the incident at the CGIC "qualifies as lost evidence and [would] show that [she] was sexually assaulted." See Response at 5. But Wright conceded at her deposition that Defendant Jones did not touch her genitals or breasts during that encounter, testifying that the sole basis for that part of her claim is that Defendant Jones put his thumb in her waistband and lifted her shirt, touching her belly. See Exhibit A at 20, 22. As discussed, such contact during a pat-down search incident to arrest is not a constitutional violation.

Upon review of the evidence supporting Defendant Jones's Motion, the Court concludes he is entitled to qualified immunity because he was acting in a law enforcement capacity when he encountered Wright, and Wright fails to carry her burden "to demonstrate that qualified immunity is inappropriate." Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017).

Accordingly, it is now **ORDERED:**

1. Defendant Jones's Motion for Summary Judgment (Doc. 29) is **GRANTED**.

2. The **Clerk** shall enter judgment in favor of Defendant Jones and against Wright, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of August, 2026.

Marcia Morales Howard

**MARCIA MORALES HOWARD**
United States District Judge

Jax-6
c:
Justina Lynn Wright
Counsel of Record